UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.    )<br>)   CRIMINAL NO. 04-10112-RGS<br>1.  JUSTIN TEAL,    )<br>)<br>2.  KARL THOMPSON,   )<br>)<br>3.  ABLOLOM WOLDESLASSIE, )<br>   a/k/a "BREEZE", and  )<br>)<br>4.  ROLAND WORRELL,   )<br>)<br>       Defendants.   ) | |

### GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

Now comes the United States of America, by and through the undersigned counsel, and submits its motion for a protective order in connection with discovery in the above-captioned matter. In support of its motion, the government sets forth the following:

1.  All of the charges alleged in the Indictment in this case relate to controlled purchases of crack cocaine by undercover police officers.

2.  Videotape surveillance was conducted of many of the controlled purchases and/or of events surrounding the controlled purchases (such as the initial encounter between the seller(s) and the undercover agent). Consequently, the undercover agents (who did not wear disguises to conceal their true physical appearance) appear on the videotapes in question.

3.  The two undercover officers will continue to operate in an undercover capacity in other investigations and their physical

safety will depend in large part on the inability of the criminals they deal with to identify them as police officers.

4. The dissemination of copies of the videotape evidence in this case to persons other than the defense attorneys in this case and persons (such as investigators) working for or with those attorneys will have the net effect of jeopardizing the safety of the undercover officers.

5. In another case investigated by the U.S. Drug Enforcement Administration in concert with the Boston Police Youth Violence Strike Force and recently prosecuted by the U.S. Attorney's Office, copies of videotapes were made available to defense attorneys without any restrictions (United States v. Kevin Modlin, et al., Criminal No Criminal No. 01-10314-MLW). Many of the videotapes in question showed a cooperating defendant having incriminating conversations with other defendants while riding in a minivan equipped with a concealed video camera. During the course of the prosecution of that case, the Youth Violence Strike Force and another cooperating defendant learned that copies of some of the videotapes featuring the lead cooperating defendant were available for ten dollars on the streets of Boston. This raised serious concerns for the safety of the lead cooperating defendant, even though that individual and its family had already moved out of the City of Boston.

6. The government fully intends to make the government's

videotape evidence in this case available to defense counsel. In the automatic discovery letters the government will begin mailing in the days and weeks ahead, defense counsel will be advised that they can view the videotapes, along with other tangible items of evidence, by making arrangements with staff in the U.S. Attorney's Office to do so at a mutually convenient time.

7. However, the government is not prepared to have the defendants obtain and maintain copies of the videotapes in question, unless some reasonable limitations are imposed to promote the safety of the undercover officers appearing on those videotapes.

8. Specifically, the government is prepared to allow defense counsel to order copies of videotapes in this case from the Duplicating Center in downtown Boston, **provided** that any defense counsel wishing to avail themselves of this opportunity are permitted to order from the Duplicating Center just a single copy of any particular videotape; are prohibited from making additional copies of any videotape so obtained; are ordered to maintain custody of any videotape so obtained; and are directed not to play the videotape for persons other than their clients or other persons assisting or working with them in connection with this matter.

9. The government considered attempting to seek stipulations to the foregoing effect from all of the defense attorneys in the related Warren Gardens prosecutions currently pending in the

District of Massachusetts. However, it is very likely that at least a few attorneys would balk at entering into any such stipulation, thereby necessitating the filing of the instant motion for a protective order. Moreover, a failure to abide by any such stipulation between the parties would have little or no consequences, whereas violation of a court-issued protective order potentially subjects a party or an attorney to sanctions.

For all the foregoing reasons, the government respectfully requests that this Honorable Court issue the protective order requested by the government and attached hereto for the Court's convenience.

                                   Respectfully submitted,

                                   MICHAEL J. SULLIVAN
                                   United States Attorney

By   /s/ Patrick M. Hamilton
      PATRICK M. HAMILTON
      DAVID G. TOBIN
      Assistant U.S. Attorneys
      U. S. Attorney's Office
      John Joseph Moakley
      United States Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA   02210
Date:    May 12, 2004      (617) 748-3100

### CERTIFICATE OF SERVICE

I, Patrick M. Hamilton, do hereby certify that a copy of the foregoing has been served this date by first-class mail upon James N. Greenberg, Esq., 144 Main Street, Brockton, MA 02301, counsel of record for defendant Justin Teal; Michael C. Andrews, Esq., 21 Custom House, Boston, MA 02110, counsel of record for Karl Thompson; Randolph Gioia, Esq., 24 School Street, Boston, MA 02108, counsel of record for defendant Ablolom Woldeslassie; and Catherine

K. Byrne, Esq., Federal Defender's Office, 408 Atlantic Avenue, Boston, MA 02110, counsel of record for defendant Roland Worrell.

Date:    May 12, 2004

_____
Patrick M. Hamilton