UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| UNITED STATES | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION |
| | ) | NO.:  04-10112-RGS |
| ABLOLOM WOLDESLASSIE | ) | |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
SUPPRESS EYEWITNESS TESTIMONY

The defendant has asked the court to prohibit the government from introducing

any testimony by the undercover police officer, Adolphus Brito that identifies the

defendant as a person who sold cocaine to Brito.  The defendant contends that the

introduction of such testimony would violate his right to due process because the police

used an impermissibly suggestive identification procedure to elicit the identification

from Brito.

I.     The July 8, 2003 out-of-court identification of the defendant by Brito must be

       suppressed  because  the  police  employed  an  unnecessarily  suggestive

       identification  procedure  and,  under  the  totality  of  circumstances,  Brito's

       identification of the defendant's photograph is unreliable.

When deciding a motion to suppress identification evidence stemming from a

pretrial photographic identification, a court must determine "'if the photographic

identification procedure was so impermissibly suggestive as to give rise to a  very

substantial likelihood of irreparable misidentification.'"  United States v. Henderson,

320 F.3d 92, 99-100 (1st Cir. 2003) (quoting Simmons v. United States, 390 U.S. 377,

384 (1968)).  This analysis requires a court to conduct a two-pronged inquiry.  First, the

court must determine whether the pretrial procedure was impermissibly suggestive. *See*

Henderson, 320 F.3d at 100 (*citing* United States v. Lopez-Lopez, 282 F.3d 1, 10 (1st

Cir. 2002)).  If the court finds the procedure impermissibly suggestive, it must then

inquire whether, under the totality of the circumstances, the identification was

nonetheless reliable.  *See* Id.; *see also* Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

The defendant contends that the identification procedure employed by the police

with the undercover officer, Brito, was impermissibly suggestive.  Furthermore, Brito's

identification of the defendant on July 8, 2003 -- even without considering the

suggestive procedure – is unreliable.  Consequently, there is a very substantial

likelihood of irreparable misidentification that makes it necessary to suppress the July 8,

2003 out-of-court identification, as well as any anticipated in-court identification

concerning the July 8, 2003 transaction, in order to protect the defendant's due process

rights.

     a).     <u>The police used an unnecessarily suggestive identification procedure to</u>
                <u>procure Brito's identification of the defendant on July 8, 2003.</u>

On July 8, 2003 Brito looked at a photograph book in an effort to identify one of

three men who sold him cocaine earlier that day.  After looking through the book once,

Brito told the police officers that the photograph of the third man was not in the book.

Approximately two hours later the police inserted a photograph of the defendant and a

photograph of Kelvin Vickers into the book.  Brito looked through the book again and

selected the defendant's photograph, identifying him as the third man.  Brito also selected the Vickers' photograph, identifying him as another man that had sold him drugs earlier in the day[1].  In effect, by inserting two additional photographs into the same group of photographs that Brito had passed over, the police suggested to Brito that the two additional photographs were of two men who had sold drugs to Brito.

An identification procedure whereby the police present only one photograph to a witness is considered impermissibly suggestive.  *See* United States v. Lumpkin, 192 F.3d 280, 288 (2d. Cir. 1999)(district court's ruling that out-of-court identification was unnecessarily suggestive because the police showed only one photograph of the defendant to the undercover officers during the debriefing session was upheld) ; United States ex rel. John v. Casscles, 489 F.2d 20, 24 (2d. Cir. 1973) (declaring "[t]he showing of only two pictures, one of each suspect, to a possible witness and asking her if these are the two men she saw, or if she can identify these two men, is clearly impermissibly suggestive"); Henderson, 320 F.3d at 100 (government conceded that process of showing witnesses a single booking photograph of the defendant was suggestive);  Robinson v. Clarke, 939 F.2d 573, 576 (8th Cir. 1991)(noting that showing of single photograph is "the most suggestive" and, hence, "most objectionable" method of identification); United States v. Barnes, 416 F. Supp. 1176, 1179 (W.D.N.Y. 1976) (the display of one photograph in a situation that did not call for swift action "approaches the inexcusable"); *see also*  Simmons v. United States, 390 U.S. 377, 383 (1968) (recognizing the increased risk of misidentification in situation where police display to witness only one photograph).

---

[1] The  alleged Vickers sale is not part of the defendant's indictment.

The defendant contends that what the police did here is no different than the "inexcusable" showing of a single photograph to an eyewitness.   Barnes, 416 F. Supp. at 1179.

b) Under the totality of the circumstances, the July 8, 2003 out-of-court identification of defendant by Brito is unreliable.

Once it is determined that the identification procedure used by the government was impermissibly suggestive, the Court must next inquire whether, under the totality of the circumstances, the identification was nonetheless reliable. *See* Henderson, 320 F.3d 92, 100; *see also* Biggers, 409 U.S. at 199-200.  The following criterion are used to determine reliability: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of time between the crime and the confrontation.  *See* Id.     There are several reasons why  Brito's out-of-court identification of the defendant is unreliable.  First, the alleged drug sales occurred quickly.  Brito did not have an opportunity to get a good look at the third man.  Brito was not focused on observing the features of the third man during the transaction.  His description of the individual that allegedly sold him crack cocaine is devoid of singular details.  Brito's description of the third man is limited to "a male wearing a black tee shirt with white beneath it."

Moreover, Brito did not have a high level of certainty regarding his identification of the defendant.  In fact, it is likely that Officer Greg Brown, who was convinced of the defendant's participation in the transactions based on his observations

of the area after the transactions concluded, was present when the defendant's

photograph was inserted into the book and when Brito identified the photograph of the

defendant.  These facts support a reasonable inference that there was "coercive pressure

to make an identification arising from the presence of another." Manson v. Brathwaite,

432 U.S. 98, 116 (1977).


II.     All subsequent out-of-court identifications of the defendant by Brito, as well as

        any putative in-court identifications, must be suppressed because they are

        tainted by the impermissibly suggestive July 8, 2003 out-of-court identification


        In Manson v. Brathwaite, 432 U.S. 98, 114 (1977), the Supreme Court stated

that, when conducting the due process analysis, courts should weigh "the corrupting

effect of the suggestive identification itself" against the reliability factors described

above.   The court must decide whether to permit an in-court identification by weighing

the degree of suggestiveness of these procedures against "factors suggesting that [the] in

-court identification may be independently reliable rather than the product of the earlier

suggestive procedures." United States v. Ciak, 102 F.3d 38, 42 (2d Cir. 1996), quoting

United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990).

        The 1st Circuit has followed this balancing approach to determine whether

identifications that follow an impermissibly suggestive out-of-court identification, or

exposure to a suspect,  are irreparably tainted.  In United States v. Bouthot, 878 F. 2d

1506 (1st Cir. 1989),  a passenger in a truck briefly observed "two white males putting a

pink blanket with what appeared to be pipes sticking out of it into the back of a truck"

in front of a burglarized home.  Id. at 1513.  When the witness heard that the residence

had been burglarized,  "he immediately contacted the police, but did not provide any

specific details -- age, height, weight -- identifying the two persons that he had seen."

Some time later, but before the witness's first appearance in court, a detective "showed

[the witness] ten photographs, including one of [the defendant], to see if [the witness]

could identify any one of those men as being a participant in the robbery."  Id. The

witness did not identify the defendant from that photographic array.

The witness was then subpoenaed to appear in the state burglary trial.   On these

occasions, the witness spoke with other witnesses.   Furthermore, the witness "saw all

five defendants being brought into court and observed the proceedings that followed."

Id. at 1514.   Twenty months later, federal officers preparing for trial in this case

conferred with the witness.   The witness "was shown fourteen photographs and

immediately identified the five photographs that portrayed the defendants in this case.

He also identified [the defendant] as the man who was carrying the bundle wrapped in a

pink blanket."   Id.

The Court of Appeals affirmed the trial court's ruling that allowed the

defendant's motion to prohibit an in-court identification of the defendant by the witness.

In doing so, the Court followed the lower court's reasoning that the putative in-court

identification was tainted by the suggestive out-of-court identification procedure.

Citing the lower court's ruling, the Court of Appeals concluded that "it is the corrupting

effect of the exposure which [the witness] had with [the defendant]. . . [in] the

Worcester County District Court which has created a present certainty that [the

defendant] is the one he saw in the back of the car carrying the blanket. . . . Any in[-

]court identification would be based on exposure at the Worcester County Court rather than [the witness's] independent memory of what happened or what he saw happen[] on [the day of the burglary]." Id. at 1516.

This Court should follow the Bouthot Court's reasoning and conclude that the post-July 8, 2003 out-of-court identifications of the defendant by Brito, as well as the putative in-court identifications, are inadmissible as a matter of due process because they are tainted by the impermissibly suggestive July 8, 2003 identification procedure. Like the witness in Bouthot, Brito briefly observed the person allegedly involved in the criminal activity on July 8, 2003. This point is supported by the fact that Brito did not provide any specific details when describing the person that allegedly sold him crack cocaine. On July 8, 2003, furthermore, Brito had interacted with countless young black males during the course of the lengthy Warren Gardens investigation.

Like the witness in Bouthot, Brito's post-July 8, 2003 out-of-court identifications of the defendant were based on the impermissibly suggestive procedure of inserting only the defendant's photograph into the book on July 8, 2003, rather than his "independent memory of what happened." Id. at 1516. That procedure created an indelible image in Brito's mind that had a "corrupting effect" on his subsequent thought process. Id. In discussing the hazards of using photographs for identifications, the United States Supreme Court has stated "[t]his danger [that the witness may make an incorrect identification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw . . . . " Simmons, 390 U.S. at 383. The Court continued "[r]egardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the

7

image of the photograph rather than of the person actually seen, reducing the

trustworthiness of the [subsequent identification]." Id. at 383-84.  The circumstances in

this case suggest that the impermissibly suggestive July 8, 2003 identification procedure

had just such an effect on Brito's mind, thereby making the subsequent out-of-court

identifications and anticipated in-court identification inadmissible as a matter of due

process.

ABLOLOM WOLDESLASSIE,
By his attorney,

/s/ *Randy Gioia*

Randy Gioia
Law Office of Randy Gioia
24 School Street
8th Floor
Boston, MA  02108
(617) 367-2480
BBO # 193480